## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 5:23-cv-700 |
| | ) |
| **CHIMENE VAN GUNDY,** | ) JURY TRIAL DEMANDED |
| **OUTSTANDING REAL ESTATE SOLUTIONS, INC.,** | ) |
| **MICHAEL TROFIMOFF,** | ) |
| **SANTOS KIDD, and** | ) |
| **MARIA TOSTA,** | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "SEC" or "Commission") alleges:

## SUMMARY OF THE ACTION

1.     The Commission brings this action to address a multi-year, multi-million dollar securities fraud perpetrated upon hundreds of investors orchestrated by Chimene Van Gundy and Outstanding Real Estate Solutions, Inc., ("ORES") and carried out with the aid of Michael Trofimoff, Santos Kidd, and Maria Tosta (collectively, "Defendants").

2.     Between at least June 2018 and November 2021, Van Gundy – the self-proclaimed "Queen of Mobile Homes" – and her company, ORES, raised approximately $18.5 million from at least 600 investors for investments in mobile homes promising guaranteed annual returns of 15% to 20%.

3.     Although Van Gundy and ORES told investors that they would use their funds to purchase, refurbish, and sell mobile homes, they instead misappropriated investor funds by making

Ponzi-like payments to existing investors, paying millions of dollars in undisclosed sales commissions, and funding Van Gundy's personal expenses and lifestyle.

4.     Trofimoff, Kidd, and Tosta were salespeople selected by, paid by, and under the direction of Van Gundy. Van Gundy and ORES paid Trofimoff, Kidd, and Tosta commissions from investor funds, which neither they nor Van Gundy ever disclosed to investors. Trofimoff made additional false and misleading statements and omissions to investors while soliciting investments in ORES, including misleading investors about whether they were beneficiaries of a key-man insurance policy on Van Gundy's life in recognition of her central role in the endeavor. Further, Tosta and Kidd failed to disclose to new investors material delays in the payment of purported interest proceeds, even though Kidd had explicitly encouraged some investors to take out home-equity loans – with time-sensitive repayment schedules – in order to invest in ORES.

5.     At all relevant times, the ORES securities sold to investors were not registered with the SEC. In addition, Trofimoff, Kidd, and Tosta acted as unregistered brokers, because they: (a) solicited (and advised) investors and effected transactions in securities for the accounts of others, (b) received transaction-based compensation, and (c) engaged in broker activities. Van Gundy acted as an unregistered broker by orchestrating sales efforts on behalf of ORES. Van Gundy recruited the salespeople and facilitated their securities solicitations by providing marketing materials and paying commissions.

6.     Through their actions, Defendants violated, and unless enjoined will continue to violate, the federal securities laws. Specifically, all Defendants violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] (as to Defendant Tosta, only Section 17(a)(3) is alleged). Defendants ORES, Van Gundy, Trofimoff, and Kidd also violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule

10b-5 thereunder [17 C.F.R. § 240.10b-5]. Additionally, Defendants ORES and Van Gundy violated the securities-registration provisions of the Securities Act (Sections 5(a) and 5(c), 15 U.S.C. §§ 77e(a), 77e(c)), and Van Gundy, Trofimoff, Kidd, and Tosta violated the broker-registration provisions of the Exchange Act (Section 15(a), 15 U.S.C. § 78(o)(a)).

7.     To protect the public from further fraudulent activity, the SEC brings this action against Defendants and seeks: (i) permanent injunctive relief; (ii) disgorgement of ill-gotten gains from Defendants, plus prejudgment interest; and (iii) civil penalties.

## DEFENDANTS

8.     **Outstanding Real Estate Solutions, Inc.**, is a Texas corporation formed in 2015 with its principal place of business in New Braunfels, Texas. ORES is a real estate company, claiming to specialize in investments in mobile homes.  ORES ceased operations in February 2022. In April 2022, a Texas state court placed ORES into receivership in shareholder litigation arising from the conduct alleged herein. Neither ORES nor its securities are registered with the Commission.

9.     **Chimene Van Gundy**, age 46, resides in New Braunfels, Texas. Van Gundy, who has marketed herself as the "Queen of Mobile Homes," is the CEO, president, owner, and founder of ORES. Van Gundy has never been registered with the Commission in any capacity. Van Gundy filed a petition for relief under Chapter 7 of the Bankruptcy Code in April 2022, days after a Texas state court placed ORES into receivership.  On September 9, 2022, the Bankruptcy Court dismissed

Van Gundy's Chapter 7 case at the request of the Trustee because of Van Gundy's failure to comply with debtor's obligations under the Bankruptcy Code.

10.   **Michael Trofimoff**, age 61, resides in Dillard, Georgia. Trofimoff is the owner and founder of Viridis Holdings LLC, doing business as Georgia Mobile Home Investing ("GMHI"). Trofimoff has never been registered with the Commission in any capacity.

11.   **Santos Kidd**, age 54, resides in Honolulu, Hawaii. Kidd is the CEO of Kina'ole Financial Services, LLC, an entity that claims to help homeowners achieve their financial goals through debt elimination and wealth acceleration. Neither Kidd nor Kina'ole Financial Services has ever been registered with the Commission.

12.   **Maria Tosta**, age 48, is a former resident of New Braunfels, Texas and Dallas, Texas. Tosta is the former Vice President of Sales for ORES and was responsible for bringing in investors. Tosta has never been registered with the Commission in any capacity.

## JURISDICTION AND VENUE

13.   The Commission brings this action pursuant to authority conferred upon it by Sections 20(b) and 20(d) of the Securities Act [15 U.S.C. §§ 77t(b) and 77t(d)], and Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d) and 78u(e)].

14.   This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and (e), and 78aa].

15.   Defendants offered and sold investments to investors pursuant to various agreements and notes.  Under Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b(a)(1)] and Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c(a)(10)], Defendants' offerings fall under

the descriptions of investment contracts and notes.  Accordingly, Defendants offered and sold securities under the federal securities laws.

16.     In connection with the conduct described in this Complaint, Defendants, directly or indirectly, made use of the mails or the means or instruments of transportation or communication in interstate commerce by, among other means, soliciting investments via the internet and accepting investor deposits via wire transfer.

17.     Venue is proper in this District because, at all relevant times, Defendant ORES had its headquarters and conducted business in this District, and Defendant Van Gundy resided in this District.  Further, acts, transactions, and courses of business constituting violations of the federal securities laws alleged in this Complaint occurred within this District, including but not limited to Defendants' solicitations of investors and the acceptance and disbursement of investor funds.

## FACTUAL ALLEGATIONS

### I.     ORES Mobile Home Securities Offerings

18.     From at least June 2018 to November 2021, Van Gundy and ORES raised approximately $18.5 million from at least 600 investors to purportedly purchase, fix, and flip mobile homes. Generally speaking, ORES's investors—who resided in at least 14 states and two countries—were unsophisticated, often unaccredited, and many had no prior experience in private investments.

19.     Van Gundy met Tosta at a "Rich Dad Poor Dad" wealth strategy class in 2017 and began paying Tosta fees for investors that Tosta referred to ORES.  As early as 2019, Van Gundy hired Tosta as ORES's VP of Sales, and together they traveled to conferences and symposiums across the U.S. to solicit ORES investors, among other things. Van Gundy marketed herself as the

"Queen of Mobile Homes" and claimed to have completed more than 400 mobile home fix-and-flips.

20.     In connection with marketing the offerings and soliciting investors, Van Gundy created, approved, and distributed offering materials, including an investor presentation that touted the ORES investment as "[p]assive [i]ncome" and represented that ORES would use investor funds to purchase, refurbish, and resell mobile homes to owner-financed buyers. ORES and Van Gundy promised investors guaranteed annual returns of 15% to 20% in the form of quarterly interest payments and a return of their principal after five years.

21.     To sell these investments to the public, ORES, Van Gundy, and Tosta directly solicited and sold ORES investments via phone, email, and text. ORES also engaged third-party salespeople, including Kidd and Trofimoff, who also solicited investors for ORES via phone and email. Kidd and Trofimoff actively solicited investors on behalf of ORES from April 2019 to May 2021, and June 2018 to December 2020, respectively.

22.     Additionally, Trofimoff solicited investors through his own company, GMHI. Trofimoff told investors that he and GMHI had formed a business partnership with Van Gundy and ORES to purchase, fix, and flip mobile homes. Trofimoff added GMHI's logo to the ORES investor presentation and offering materials, and distributed them to potential investors along with other information about GMHI and the partnership with ORES.

23.     Kidd, a third-party salesperson based in Honolulu, Hawaii, distributed the ORES offering materials and investor presentation to investors. He specifically encouraged investors to apply for a home equity line of credit ("HELOC") as a way to fund their investments in ORES.

24.     To memorialize their investments in ORES, investors executed one of three forms of documents: Mobile Home Lien Purchase Agreements ("MHLPAs"), Service Agreements, or

Promissory Notes. Van Gundy approved the final content contained within each document and signed each document as CEO and/or President of ORES.

25.     No Defendant ever filed a registration statement with the Commission in connection with their offer or sale of these agreements and notes – which were securities. Similarly, no Defendant ever registered as a broker to offer and sell securities to investors.

### a. MHLPAs

26.     ORES entered into MHLPAs with investors from approximately 2018 to 2019. The MHLPAs contained, among other things, the make, year, label number, and address(es) of the mobile home(s) that ORES claimed it would use investor funds to buy, refurbish, and sell. The MHLPAs also represented that Van Gundy and ORES were the "legal owners" of the specific mobile home(s), and that they would sell the mobile home(s) to an owner-financed buyer for a term of six-to-eight years for $27,000 to $30,000,[1] from which the investor would receive guaranteed quarterly returns.

### b. Service Agreements

27.     From approximately 2018 to 2021, ORES and investors executed Service Agreements. The Service Agreements represented that, among other things, ORES would "remodel a mobile home" with investor funds protected by a lien on a mobile home. According to the Service Agreement, ORES would sell a mobile home to an owner-financed buyer for a term of eight years for $38,500 to $40,000, from which the investor would receive guaranteed quarterly returns.

---

1 A few MHLPAs had terms of five-to-ten years for $35,000 to $40,000.

### c. Promissory Notes

28.     From approximately 2018 to 2021, ORES issued Promissory Notes to investors. The Promissory Notes listed the "term[s] of investment" (generally five years), the amount of quarterly returns, and the dates upon which ORES would distribute quarterly return payments to investors. Certain Promissory Notes also contained late-fee and default-notice provisions. Other Promissory Notes referenced the investor's purported secured lien, ORES's key-man insurance policy, and so-called "FEMA projects." Investors solicited by Trofimoff executed notes bearing the logos of both ORES and GMHI.[2] These joint ORES/GMHI notes contained the signatures of Van Gundy and/or Trofimoff. These Trofimoff-solicited investors also received a document titled "Investor Disclosures," which informed investors, among other things, that GMHI and ORES had a business partnership to sell the investments.

## II.    Misrepresentations and Omissions Regarding the ORES Investments

29.     Defendants used various material misrepresentations and omissions to persuade investors to invest with ORES and/or GMHI.

### a. ORES and Van Gundy lied about mobile home ownership.

30.     Van Gundy and ORES represented to investors, both orally and through ORES communications, investor presentations, MHLPAs, Promissory Notes, and Service Agreements, that Van Gundy and ORES would use investor funds to purchase, refurbish, and resell mobile homes. Of the 248 mobile homes connected to ORES and Van Gundy between June 2018 and November 2021, Van Gundy and ORES actually owned only six. To give the appearance of legitimacy to ORES transactions, Van Gundy used identification numbers of mobile homes owned

---

2 Some of the notes contained only the GMHI logo but made multiple references to ORES and Van Gundy.

by other mobile home retailers, presenting them to investors as mobile homes that ORES purportedly bought through investor funding.

**b.  Commission payments to ORES salespersons**

31.     Van Gundy and ORES knowingly omitted to tell investors, orally or through the ORES marketing materials and offering documents, that they paid commissions to hired salespersons out of investor funds. Instead, Van Gundy and ORES falsely represented to investors, orally and in certain Promissory Notes, that their "[i]nvested funds will be used to buy, fix, and sell mobile homes." In addition, Kidd and Trofimoff knowingly – and Tosta negligently – failed to disclose to investors that they received commissions—paid out of investor funds—for their sales of the ORES investments, which contradicted the use of funds represented in the offering materials.

32.     Kidd affirmatively misrepresented to some investors that he did not receive commissions, even though he received commission payments totaling $285,155.97 between April 2019 and May 2021, ranging from $1,000 to $13,000 per sale.

33.     Tosta received commission payments totaling $102,076.31. Trofimoff received $756,234.18 in transaction-based compensation, taking a 10% commission from investor funds raised and, in addition, taking approximately 40% from the funds intended as distributions to GMHI investors as "returns."

**c.  Investor funds were not secured by liens on mobile homes.**

34.     Van Gundy and ORES represented to investors—in the offering documents, orally, and in certain Promissory Notes—that investor funds were tied to a secured lien on specific mobile homes. The Promissory Notes stated that ORES would secure investor funds "by listing investor

as a lien holder . . . on one or more mobile home(s) having a value equal to or greater than the[ir] principal amount."

35.     The ORES investor presentation stated in the Q&A section: "How is my investment secured? Investors are listed as lien holders within Outstanding Real Estate Solutions on one or more mobile home(s) having a value equal to or greater than the principal amount." Because neither Van Gundy nor ORES actually owned these mobile homes, the investors never held security interests in them. Additionally, neither Van Gundy nor ORES ever filed any lienholder paperwork on behalf of the investors with the Texas Department of Housing and Community Affairs, Manufactured Homes Division.

**d.  Van Gundy and ORES sold the same mobile home(s) to multiple investors.**

36.     Van Gundy and ORES executed MHLPAs and Promissory Notes with multiple investors tied to the same mobile home without disclosing that a prior investor had given ORES funds to purportedly fix and flip that specific mobile home.

37.     The ORES investment was not a pooled investment. Van Gundy and ORES promised each investor that ORES would use their funds to buy and refurbish a specifically identified mobile home, for which the investor would be the record lienholder. At least 23 times, Van Gundy and ORES solicited funds to buy, fix, and flip a mobile home that was already connected to an earlier investor. In some cases, Van Gundy sold the same mobile-home investment to as many as five separate investors. Even worse, Van Gundy and ORES were not even the record owner of—and had no affiliation with—at least 19 of the mobile homes they claimed to sell.

**e.  Key-man insurance policies did not include investors as beneficiaries.**

38.     From at least December 2017 to November 2021, Van Gundy, Trofimoff, and ORES—orally and through ORES marketing materials, offering documents, and the joint

ORES/GMHI Promissory Notes—represented to investors that ORES owned a key-man insurance policy on Van Gundy (as ORES's CEO) and would list each investor as a "beneficiary" on the policy in the amounts of their principal investments.

39.    While Van Gundy did obtain at least two key-man insurance policies, she knowingly omitted investors as beneficiaries on both policies. Instead, she designated the "Chimene Van Gundy Life Insurance Trust Estate" and ORES as beneficiaries.

40.    Nevertheless, Van Gundy, Trofimoff, and ORES repeatedly told investors that their investment funds would be safe, protected, and/or secure, because investors were explicitly named as beneficiaries of these policies.

41.    When pressed by investors for proof of their beneficiary status, Van Gundy and Trofimoff typically ignored or declined the requests.  In some cases, Van Gundy and Trofimoff provided a copy of the policy but failed to produce a list of beneficiaries.

     **f.  Van Gundy and ORES touted a non-existent FEMA contract.**

42.    From at least December 2017 to April 2019, Van Gundy and ORES—orally and through ORES marketing materials and offering documents—represented to investors that FEMA awarded Van Gundy a contract to sell mobile homes to FEMA for people displaced by hurricanes, such as Hurricane Harvey that impacted Texas.

43.    In reality, however, as Van Gundy and ORES knew, FEMA never awarded a contract to Van Gundy or ORES to sell mobile homes.

     **g.  Tosta and Kidd omitted payment delay issues when soliciting new investors.**

44.    In January 2020, ORES began to fall behind on its guaranteed quarterly payments to investors. While ORES was not making timely payments to investors, and in some cases no payments at all, Tosta continued to tell prospective investors that ORES would pay them their

guaranteed returns "quarterly" and negligently omitted to disclose information about ORES's payment woes when she sold additional and new investments.

45.     Between at least May 2020 through September 2021, Kidd also knew that ORES was missing or delaying guaranteed payments to investors, but he omitted this information when offering and selling the ORES investment to new investors. Instead, Kidd assured new investors that the investment was "safe" and "recession-proof," and he advised them to pursue HELOCs as their primary funding source for the investment. Kidd knew these HELOCs would require timely payments on the debt, funded by purportedly timely ORES investor distributions. Nonetheless, Kidd continued to tell investors that ORES would pay them "quarterly" and that they could expect to receive ORES payments "long-term."

## III.  Additional Fraudulent Conduct as the ORES Scheme Collapsed

46.     Beginning in approximately January 2020, as ORES struggled to pay investors their guaranteed quarterly returns, Van Gundy, Trofimoff, and ORES told existing investors more lies about the status of their payments—while simultaneously soliciting new investors with falsehoods to keep the scheme from collapsing.

### a.  Van Gundy, Trofimoff, and ORES lied about a merchant payment processor.

47.     Between approximately January 2020 and January 2021, Van Gundy and Trofimoff repeatedly blamed ORES's late payments to investors on its purported external merchant processor, who Van Gundy claimed was responsible for collecting the monthly mobile home payments from the owner-financed buyers.

48.     Van Gundy also provided investors with a letter that she claimed that the merchant processor had sent to ORES asserting that a "computer malware attack" delayed investor

payments. Additionally, Trofimoff told investors that he and Van Gundy were "filing a formal complaint" against the merchant processor.

49.     In reality, the company that Van Gundy and Trofimoff identified as the merchant processor did not provide any payment processing services for ORES or its purported mobile home investments. Additionally, the company neither authored nor provided the purported "malware attack" letter to ORES, and Trofimoff's claims about filing a formal complaint were fiction.

### b. Van Gundy and ORES lied about being locked out of ORES's bank account.

50.     From June 2021 to July 2021, Van Gundy and ORES falsely told investors that ORES had been "locked out" of its bank account and, as a result, could not pay any guaranteed returns to investors. While access to the ORES bank account was briefly frozen, Van Gundy lied about the length of the freeze as an (untrue) excuse for missed and delayed payments. For more than a month, Van Gundy falsely told investors that the ORES bank "account is still locked, and we've been unable to send any payments to any investors."

51.     In reality, Van Gundy and ORES had access to the account during much of the purported lockout period and continued to pay quarterly returns to certain investors from the bank account.

52.     To try to add credibility to her bank account lie, Van Gundy instructed ORES's part-time CFO to draft a "Bank Transitional Letter." The letter, which contained information provided by Van Gundy, represented to investors that the ORES bank account was locked and falsely added that ORES had "transitioned its operating banking relationship" from one bank to another "to better service its client base." The letter added that the new bank was "performing a review of the prior account history" and had "put a temporary hold on all transactional activity," all of which was false at the time the letter was disseminated to investors, when ORES was

13

continuing to make distributions to some investors from the accounts that Van Gundy claimed were locked.

### c. Van Gundy and ORES lied to investors about the use of additional funds.

53.     In May 2021, also at Van Gundy's instruction, the part-time CFO drafted a "Loan Confirmation Letter" to existing investors seeking additional funds. The letter falsely claimed that ORES needed "$900,000 in transactional funding" and that the funds would be used "for a legitimate purpose." Van Gundy distributed this letter to ORES investors.

### d. Van Gundy and ORES attempted to solicit new investors with new lies.

54.     In May 2021, a representative from an ORES investor group requested that the company draft a "commendation letter" to provide to potential new investors. Van Gundy instructed the part-time CFO to draft a letter, titled "Investor Comfort Letter," for distribution to prospective investors in ORES securities. This letter claimed that (1) ORES and Van Gundy had a "100% repayment history to its vendor and its investors"; (2) ORES and Van Gundy were of the "highest integrity"; and (3) the funds that ORES was seeking from investors would be used "for a legitimate business purpose."

55.     As discussed above, Van Gundy and ORES did not have a "100% repayment history" and were not actually buying, fixing, and flipping mobile homes with investor funds. Accordingly, the claims in this Investor Comfort Letter were false.

### IV.   ORES and Van Gundy misused investor funds.

56.     Rather than using investor funds as represented in the ORES marketing materials and offering documents, ORES and Van Gundy misspent investor funds by paying undisclosed sales commissions, making Ponzi-like payments to existing investors, and paying Van Gundy's personal expenses.

57.     Of the approximately $18.5 million in investor funds raised, ORES used more than $11 million to make "interest proceeds" payments (Ponzi-like payments) to existing investors in order to create and maintain the illusion of ORES's legitimacy and success.

58.     Additionally, Van Gundy and ORES paid approximately $1.1 million in undisclosed commissions to Trofimoff (approximately $756,000), Tosta (approximately $102,000), and Kidd (approximately $285,000).

59.     In addition to the $7,000 *weekly* salary that she drew from ORES, Van Gundy misappropriated more than $5.7 million in investor funds for her own personal use, spending those funds on a variety of purposes, including payments for her nanny, private school tuition for her children, veterinarian bills and boarding costs for horses, cash withdrawals, auto payments, retail stores, and debt extinguishment, among other personal expenses.

60.     As of the filing of this Complaint, Van Gundy's liabilities exceed her total assets and a Texas state court-appointed receiver has been unable to identify any assets belonging to ORES.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

**Fraud in Connection with the Purchase or Sale of a Security**
**Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and**
**Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]**

*Against Defendants ORES, Van Gundy, Trofimoff, and Kidd*

61.     Plaintiff re-alleges and incorporates paragraphs 1 through 60 of this Complaint by reference as if set forth verbatim in this Claim.

62.     By engaging in the acts and conduct alleged herein, Defendants ORES, Van Gundy, Trofimoff, and Kidd, directly or indirectly, in connection with the purchase or sale of a security, by use of the means or instrumentality of interstate commerce, or of the mails, knowingly or with severe recklessness:

      a.   employed a device, scheme, or artifice to defraud; and/or

      b.   made an untrue statement of a material fact, or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

      c.   engaged in an act, practice, or course of business which operated or would operate as a fraud or deceit upon any person.

By reason of the foregoing, Defendants ORES, Van Gundy, Trofimoff, and Kidd have violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §§ 240.10b-5].

## SECOND CLAIM FOR RELIEF

### Fraud in the Offer or Sale of a Security
### Violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]

#### Against Defendants ORES, Van Gundy, Trofimoff, and Kidd

63.     Plaintiff re-alleges and incorporates paragraphs 1 through 60 of this Complaint by reference as if set forth verbatim in this Claim.

64.     By engaging in the acts and conduct alleged herein, Defendants ORES, Van Gundy, Trofimoff, and Kidd, directly or indirectly, in the offer or sale of a security, by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, have:

16

a.   knowingly (or with severe recklessness) employed a device, scheme, or artifice to defraud; and/or

b.   knowingly (or with severe recklessness), recklessly, or negligently obtained money or property by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

c.   knowingly (or with severe recklessness), recklessly, or negligently engaged in a transaction, practice, or course of business which operated or would operate as a fraud or deceit upon the purchaser.

65.   By reason of the foregoing, Defendants ORES, Van Gundy, Trofimoff, and Kidd have violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## THIRD CLAIM FOR RELIEF

### Fraud in the Offer or Sale of a Security

### Violations of Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)]

### *Against Defendant Tosta*

66.   Plaintiff re-alleges and incorporates paragraphs 1 through 60 of this Complaint by reference as if set forth verbatim in this Claim.

67.   By engaging in the acts and conduct alleged herein, Defendant Tosta, directly or indirectly, in the offer or sale of a security, by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, has negligently engaged in a

transaction, practice, or course of business which operated or would operate as a fraud or deceit upon the purchaser.

68.     By reason of the foregoing, Defendant Tosta has violated, and unless enjoined will continue to violate, Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)].

## FOURTH CLAIM FOR RELIEF

**Securities-registration violations**

**Violations of Sections 5(a) and (c) of the Securities Act [15 U.S.C. §§ 77e(a) & (c)]**

*Against Defendants ORES and Van Gundy*

69.     Plaintiff re-alleges and incorporates paragraphs 1 through 60 of this Complaint by reference as if set forth verbatim in this Claim.

70.     By engaging in the acts and conduct alleged herein, Defendants ORES and Van Gundy, directly or indirectly:

    a.  made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of any prospectus or otherwise, securities as to which no registration statement was in effect; and/or

    b.  for the purpose of sale or delivery after sale, carried or caused to be carried through the mails or in interstate commerce, by means or instruments of transportation, securities as to which no registration statement was in effect; and/or

    c.  made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell, through the use or medium

of any prospectus or otherwise, securities as to which no registration statement

had been filed.

71.     There were no applicable exemptions from registration.

72.     By engaging in the conduct described above, Defendants ORES and Van Gundy

have violated, and unless enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities

Act [15 U.S.C. §§ 77e(a) and (c)].


**<u>FIFTH CLAIM FOR RELIEF</u>**

**Broker-registration Violations**

**Violations of Section 15(a) of the Exchange Act
[15 U.S.C. § 78o(a)]**

***Against Defendants Van Gundy, Trofimoff, Kidd, and Tosta***

73.     Plaintiff re-alleges and incorporates paragraphs 1 through 60 of this Complaint by

reference as if set forth verbatim in this Claim.

74.     By engaging in the conduct described herein, Defendants Van Gundy, Trofimoff,

Kidd, and Tosta, while engaged in the business of effecting transactions in securities for the

account(s) of others, made use of the mails or any means or instrumentality of interstate

commerce to effect transactions in, or to induce or attempt to induce the purchase or sale of, a

security without being registered with the Commission as a broker or dealer or as an associated

person of a registered broker or dealer, in accordance with Section 15(b) of the Exchange Act.

75.     By engaging in this conduct, Defendants Van Gundy, Trofimoff, Kidd, and Tosta

have violated, and unless enjoined will continue to violate, Section 15(a) of the Exchange Act

[15 U.S.C. § 78o(a)].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a judgment:

1.　　Permanently enjoining Defendant ORES from violating Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a) and (c), and 77q(a)], and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

2.　　Permanently enjoining Defendant Van Gundy from violating Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a) and (c) and 77q(a)], and Sections 10(b) and 15(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78(o)(a)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

3.　　Permanently enjoining Defendants Trofimoff and Kidd from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], and Sections 10(b) and 15(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78(o)(a)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

4.　　Permanently enjoining Defendant Tosta from violating Section 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(3)] and Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)];

5.　　Permanently enjoining Defendants Van Gundy, Trofimoff, Kidd, and Tosta from directly or indirectly, including, but not limited to, through any entity owned or controlled by them, participating in the issuance, purchase, offer, or sale of any security, provided, however, that such injunctions shall not prevent them from purchasing or selling securities for their own personal accounts;

6.　　Permanently enjoining Defendant Van Gundy from serving as an officer or director of any issuer required to file reports with the SEC under Section 12(b), 12(g), or 15(d) of the

Exchange Act [15 U.S.C. §§ 78l(b), 78l(g), and 78o(d)] pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)];

7.      Ordering the Defendants to disgorge all ill-gotten gains received as a result of the violations alleged herein, plus prejudgment interest thereon, pursuant to the Court's equitable powers and Sections 21(d)(3), 21(d)(5), and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)];

8.      Ordering the Defendants to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; and

9.      Imposing such other and further relief as the Court may deem just and proper.

Dated: May 31, 2023                    Respectfully submitted,

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION

Matthew J. Gulde
Illinois Bar No. 6272325
United States Securities and
Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, TX 76102
Telephone: (817) 978-1410
Facsimile: (817) 978-4927
guldem@sec.gov

*Attorney for Plaintiff*